UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

10 11492

| | |
|---|---|
| SMASHIES POUCHES, INC.,<br>207 SOUTH STREET, 1ST FLOOR<br>BOSTON, MA  02111,<br><br>    Plaintiff,<br><br>    v.<br><br>IPN USA CORPORATION,<br>700 DIVIDEND DRIVE<br>PEACHTREE CITY, GA  30269,<br><br>SERVE:<br><br>REGISTERED AGENT<br>MARK D. OLDENBURG,<br>2004 COMMERCE DRIVE NORTH<br>SUITE 200<br>PEACHTREE CITY, GEORGIA 30269,<br><br>    and<br><br>LIQUID MANUFACTURING, LLC,<br>6150 WHITMORE LAKE ROAD<br>BRIGHTON, MI  48116,<br><br>SERVE:<br><br>REGISTERED AGENT<br>PETER W. PAISLEY,<br>6150 WHITMORE LAKE ROAD<br>BRIGHTON, MI 48116,<br><br>    Defendants. | Civil Action No. _____ |

## COMPLAINT

Smashies Pouches, Inc. ("Smashies") makes the following Complaint against IPN USA Corporation ("IPN") and Liquid Manufacturing, LLC ("Liquid MFG") for damages Smashies

EAST\43221089 7

sustained when IPN and Liquid MFG breached their agreements. IPN and Liquid MFG agreed to produce a fruit USDA Organic snack for children, to Smashies's specifications. In fact, IPN and Liquid MFG produced bloated, leaking snacks, that were contaminated with yeast and mold and unfit for human consumption. IPN and Liquid MFN never explained what happened and never fixed the problems. Smashies's business is gone and it has no product to sell.

## PARTIES

1. Plaintiff Smashies is a Massachusetts corporation with its principal place of business at 207 South St., 1st Floor, Boston, MA, 02111. Until January 2010, Smashies produced no added sugar, no added salt, USDA organic fruit purees for children.

2. Defendant IPN is a Georgia corporation with its principal place of business at 700 Dividend Drive, Peachtree City, GA 30269. IPN manufactures flexible stand-up pouches, caps, and spouts for packaging liquids and fruit purees.

3. Defendant Liquid MFG is a Michigan corporation with its principal place of business at 6150 Whitmore Lake Road, Brighton, MI 48116. Liquid MFG packs distilled liquors, soft drinks and fruit juices and fruit purees. Liquid MFG is known in the industry as a "co-packer."

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because each party is a citizen of a different state and the amount in controversy exceeds $75,000.

5. Venue is proper because Defendants transact business in the Commonwealth of Massachusetts and because many of the acts, transactions, and occurrences alleged herein occurred in Massachusetts.

## FACTS

6.  Salmonella in fruit pops, peanut butter and veggie chips. E. coli in ground beef and packaged spinach. Listeria in deli meats. Melamine in baby food and chocolate. Only a quarter of Americans are "confident" that our food supply is safer now than it was in 2008. In March 2009, the Food Safety Center for Science in the Public Interest testified before Congress that 46 percent of Americans were worried they might get sick from eating contaminated food products. At that same Congressional hearing, the former Associate Commissioner of the United States Food & Drug Administration, William K. Hubbard, testified that in 2009, 87 million Americans were sickened by contaminated food, resulting in 6,000 deaths. He said this meant that "we are sustaining food-related deaths of an equivalent number of our citizens killed in the World Trade Center attacks every 6 months."

7.  Even though our food may not always be safe, America's children are becoming obese in greater numbers than at any other time in our history and at an increasingly younger age. In response, President Obama created a Task Force on Childhood Obesity to, among other things, provide healthy food in schools and to improve access to healthy and affordable food for children. The First Lady invited school children to help her plant an organic vegetable garden at the White House to encourage them to eat healthier food and snacks.

8.  Smashies went into business in late 2007 to manufacture a safe, healthy snack alternative for children. Smashies's fruit pouches contained organic pureed fruit packaged in a shelf stable, flexible, stand-up, squeezable pouch. There was no added salt, sugar, or artificial sweeteners, and the fruit was certified USDA organic. Parents could pack a Smashies squeezable pouch in a child's lunch box, take them on car trips, or keep them in the refrigerator to replace sugary, non-nutritious, between-meal snacks. Smashies's fruit purees came in four

flavors – Straw-Nana, Snappy Apple, Mango Smash, and Apple Cinnamon. The Smashies fruit pouches was the first product of its kind on the market.

9. In January 2008, Smashies approached IPN about manufacturing the flexible stand-up pouches, caps, and spouts for Smashies products. Smashies understood that IPN was one of very few companies – possibly the only company – with the technology to produce Smashies's fruit snacks. IPN told Smashies that IPN products and machinery would meet Smashies's specifications. Smashies told IPN that it needed an experienced company willing to be flexible in the short term while Smashies lined up its distributors, wholesalers, and retail stores. IPN agreed to partner with Smashies.

10. Smashies and IPN agreed on terms including quantities, pricing, delivery schedule and materials, such as squeezable pouches and fitments. The pouches consist of the pouch itself plus spouts and caps. IPN agreed to help Smashies find a co-packer to manufacture the fruit purees and to fill and seal the IPN pouches.

11. IPN recommended PouchTec and, in the spring of 2008, IPN and PouchTec began manufacturing and packaging Smashies's fruit purees. Smashies sold the snacks to food distributors and wholesalers including Whole Foods and HEB. Smashies's distribution grew as did its reputation as a maker of healthy, nutritious fruit snacks for children.

12. In the summer of 2008, the IPN pouches filled by PouchTec began to crack, spouts failed and caps malfunctioned. Smashies asked for an explanation. IPN vouched for its pouches.

13. In December 2008, Smashies identified an alternate co-packer, Liquid Manufacturing. Smashies and Liquid MFG agreed to terms including, among others, raw materials, packaging materials, processing requirements, equipment and machinery, transportation and delivery terms, warehousing, quality control procedures, customer-specific specifications, quantities, timing, labor costs, overhead, yield standards, sizing requirements, and price. Liquid MFG assured Smashies that it had the resources and expertise to manufacture the Smashies fruit snacks.

14. Smashies told Liquid MFG that it needed its finished product quickly because Smashies owed customers products and the problems with PouchTec had delayed Smashies's delivery schedule. Liquid MFG began manufacturing and pasteurizing the fruit purees, pumping the fruit purees into IPN's pouches and sealing them using IPN's fitments.

15. In July 2009, IPN's pouches failed again. The pouches leaked and the fruit puree in the pouches tested positive for yeast and mold. Smashies could not sell these pouches – they were defective.

16. Liquid MFG and Smashies agreed to change some of the machinery and reformulate the product to see if they could solve the problem. Liquid MFG acquired some additional machinery from IPN and implemented the changes. The IPN pouches still failed, despite the changes. Liquid MFG blamed IPN's pouches and fitments, not its own processes, but also said it could fix the problem. Liquid MFG never did. Nor did IPN.

17. In December 2009, Smashies received an anonymous email from a Liquid MFG employee. The employee said Liquid MFG had made three mistakes. First, Liquid MFG had not welded the piping that pumped the fruit puree into the pouches in a sanitary fashion. Second,

Liquid MFG's piping contained metal shavings to which bacteria could adhere. Third, Liquid MFG did not pasteurize the fruit purees at a temperature high enough to kill bacteria.

18.   In late 2009, Smashies learned that Liquid MFG made Happy Baby food products for a company called Nurture, Inc. using the same process and the same IPN pouches that it used for Smashies. On January 13, 2010, Nurture, Inc. voluntarily recalled Happy Baby food products because of a "packaging defect that potentially could cause the pouches to swell or leak." The recall notice said that "[s]wollen or leaking pouches could indicate that the products may contain bacteria that could potentially cause illness."

19.   The anonymous tip from the Liquid MFG employee and the fact of the Happy Baby recall alarmed Smashies. Smashies's business was making healthy snack alternatives for children, not products that "may contain bacteria" and that "could potentially cause illness." To make sure no-one was harmed by the defective pouches, Smashies voluntarily recalled everything manufactured since September 2009. In January 2010, production stopped. Liquid MFG promised to fix the problems and resume production.

20.   Neither Liquid MFG nor IPN ever fixed the problems. They ignored Smashies's requests for status updates, they ignored Smashies's demand for performance, and they ignored Smashies's requests for explanations of what had gone wrong. Instead, in August 2010, IPN sent a collection agency after Smashies, claiming that Smashies owed IPN $80,000 for the defective, unusable and unsafe pouches.

21.   On January 21, 2010, the United States Food and Drug Administration ("FDA") inspected Liquid MFG and found a raft of safety problems at the plant. According to FDA, Liquid MFG's manufacturing and packaging process failed to ensure that products, such as

Smashies's fruit pouches, were safe to consume and free of contamination. FDA also said that Liquid MFG had never registered with the agency, as required by law. Liquid MFG never told Smashies about this inspection or its findings.

22. Smashies now has no product to sell and its business is at a standstill.

## CAUSES OF ACTION

## COUNT I

## BREACH OF EXPRESS OR IMPLIED CONTRACT
## AGAINST DEFENDANT IPN

23. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

24. IPN accepted Smashies's offer to manufacture pouches, caps, and spouts for Smashies's fruit puree snack. IPN and Smashies agreed on the price, quantity, materials, and delivery schedule, among other terms.

25. IPN performed under the agreed terms for a period of months.

26. In mid-2008, IPN's pouches began to leak, spouts failed and caps malfunctioned. Smashies switched from one manufacturer, PouchTec, to another, Liquid MFG. IPN pouches continued to fail, even after Smashies switched to the new manufacturer. The fruit puree in the pouches tested positive for yeast and mold.

27. IPN's breach damaged Smashies in an amount to be determined at trial, but in any event, no less than $75,000.

## COUNT II
### BREACH OF EXPRESS OR IMPLIED CONTRACT
### AGAINST DEFENDANT LIQUID MFG

28. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

29. Liquid MFG accepted Smashies's offer to manufacture and package Smashies's fruit puree snack. Liquid MFG and Smashies agreed on the price, quantity, and delivery requirements, among other terms.

30. Liquid MFG performed under the agreed terms for a period of months.

31. In July 2009, Liquid MFG began producing products that did not meet Smashies's specifications and that were not safe enough to sell. The pouches leaked and the fruit puree in them tested positive for yeast and mold.

32. Smashies recalled its products. Liquid MFG never fixed the manufacturing problems.

33. Liquid MFG's breach damaged Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT III
### PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE
### AGAINST DEFENDANT IPN

34. Smashies incorporates by reference and realleges the fact set out in the paragraphs above.

35. IPN promised to provide Smashies with pouches, spouts, caps and machinery suitable to package Smashies's fruit purees.

36. Smashies reasonably relied, to its detriment, on IPN's promise.

37. IPN did not, in fact, provide pouches, caps, spouts, and machinery suitable to package Smashies's fruit purees – the pouches leaked, spouts failed, and caps malfunctioned. The fruit puree in the pouches tested positive for yeast and mold.

38. IPN did not honor its promise to Smashies, which damaged Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT IV

### PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE AGAINST DEFENDANT LIQUID MFG

39. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

40. Liquid MFG promised to manufacturer Smashies's fruit purees and fill IPN's pouches to Smashies's specifications.

41. Smashies reasonably relied, to its detriment, on Liquid MFG's promise.

42. Liquid MFG did not, in fact, manufacture products to Smashies's specifications. The pouches leaked and the fruit puree tested positive for yeast and mold.

43. Liquid MFG did not honor its promise to Smashies, which damaged Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT V

## BREACH OF EXPRESS WARRANTY AGAINST IPN

44. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

45. IPN warranted to Smashies that its pouches, spouts, caps, and machinery would meet Smashies's specifications.

46. Smashies relied upon IPN's representations and warranties and IPN's representations and warranties became part of the basis of the bargain between Smashies and IPN.

47. IPN's pouches, caps, spouts, and machinery did not, in fact, meet Smashies's specifications – pouches leaked, the spouts failed, and the caps malfunctioned. The fruit puree in the pouches tested positive for yeast and mold.

48. Within a reasonable time after discovering the non-conforming packaging, manufacturing, equipment and supply problems, Smashies gave notice of the breaches of warranty to IPN.

49. IPN did not cure the defects.

50. IPN's breach of warranty damaged Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT VI

### BREACH OF EXPRESS WARRANTY AGAINST LIQUID MFG

51. Smashies incorporates by reference and realleges all the facts set out in the paragraphs above.

52. Liquid MFG represented and warranted to Smashies that it had the resources and expertise to manufacture and package products to Smashies's specifications.

53. Smashies relied upon Liquid MFG's representations and warranties and Liquid MFG's representations and warranties became part of the basis of the bargain between Smashies and Liquid MFG.

54. Liquid MFG did not, in fact, manufacture products to Smashies's specifications. The pouches leaked and the fruit puree in the pouches tested positive for yeast and mold.

55. Within a reasonable time after discovering the non-conforming packaging and manufacturing problems, Smashies gave notice of the breaches of warranty to Liquid MFG.

56. Liquid MFG did not cure the defects.

57. Liquid MFG's breach of warranty damaged Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT VII

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND OF QUALITY AND FITNESS AGAINST IPN

58. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

59. IPN warranted that its food pouches, spouts, caps, and machinery would meet Smashies's specifications and be fit for human consumption.

60. IPN knew that Smashies was relying upon IPN's skill and judgment to supply pouches, caps, spouts, and machinery that met Smashies's specifications and were fit for human consumption.

61. IPN did not, in fact, provide pouches, caps, and spouts fit for human consumption. The pouches leaked, spouts failed, and caps malfunctioned. The fruit puree packed in IPN's pouches tested positive for yeast and mold.

62. IPN's breaches of the implied warranty of merchantability and implied warranty of quality and fitness damaged Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT VIII

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND OF QUALITY AND FITNESS AGAINST LIQUID MFG

63. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

64. Liquid MFG warranted that the Smashies food products it manufactured and packaged would meet Smashies's specifications and be fit for human consumption.

65. Liquid MFG knew that Smashies was relying upon Liquid MFG's skill and judgment to manufacture and package food products that meet Smashies's specifications and were fit for human consumption.

66. The food products that Liquid MFG manufactured were not, in fact, fit for human consumption. The pouches leaked, spouts failed, and caps malfunctioned. Liquid MFG used non-sterile processes and the fruit purees in the pouches tested positive for yeast and mold.

67. Liquid MFG's breaches of the implied warranty of merchantability and implied warranty of quality and fitness directly and proximately caused damages to Smashies in an amount to be determined at trial, but in any event no less than $75,000.

## COUNT IX
## NEGLIGENCE AGAINST DEFENDANT IPN

68. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

69. Defendant IPN had a duty to exercise ordinary care in the manner in which it manufactured and designed its pouches, spouts, caps, and machinery for use with Smashies's fruit puree.

70. Defendant IPN breached its duty to Smashies by designing and manufacturing its pouches, spouts, caps, and machinery such that the pouches leaked and the fruit purees in the pouches tested positive for yeast and mold. IPN's pouches did not meet Smashies's specifications and could not be sold.

71. IPN's negligence directly and proximately caused damages to Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT X
## NEGLIGENCE AGAINST DEFENDANT LIQUID MFG

72. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

73. Defendant Liquid MFG had a duty to exercise ordinary care in the manner in which it manufactured and packaged Smashies fruit purees.

74. Defendant Liquid MFG breached its duty to Smashies such that the pouches leaked and the fruit puree in the pouches tested positive for yeast and mold. Liquid MFG's finished product did not meet Smashies's specifications and could not be sold.

75. Liquid MFG's negligence directly and proximately caused damages to Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT XI
## STRICT LIABILITY AGAINST DEFENDANT IPN

76. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

77. Smashies purchased pouches, caps, and spouts from IPN, and used its equipment to manufacture food products for human consumption.

78. IPN designed and manufactured the pouches, caps, spouts and equipment and sold them in a defective and unreasonably dangerous condition. The pouches, caps, spouts, and equipment failed. The pouches leaked and the fruit purees packed in the pouches tested positive for yeast and mold. The products were not fit for human consumption.

79. The pouches, caps, spouts and equipment reached Smashies without any substantial change in their condition.

80. If the pouches, caps, spouts and equipment had not been defectively designed and manufactured, the Smashies products would not have malfunctioned or been contaminated and Smashies would not have suffered its injuries.

81. These defective conditions directly and proximately caused damages to Smashies in an amount to be determined at trial, but in no event less than $75,000.

## COUNT XII
## STRICT LIABILITY AGAINST DEFENDANT LIQUID MFG

82. Smashies incorporates by reference and realleges the facts set out in the paragraphs above.

83. Liquid MFG provided Smashies with manufacturing and packaging services in order to produce Smashies fruit purees for human consumption.

84. The fruit purees that Liquid MFG manufactured and packaged were defective and unreasonably dangerous for human consumption. The pouches leaked and the fruit puree in the pouches tested positive for yeast and mold. When FDA inspected Liquid MFG, it found that Liquid MFG's processes were not sufficient to ensure the products did not pose a health hazard to children.

85. If the fruit purees had not been defectively manufactured, the Smashies products would not have malfunctioned or been contaminated and Smashies would not have suffered its injuries.

86. These defective conditions directly and proximately caused damages to Smashies in an amount to be determined at trial, but in no event less than $75,000.

WHEREFORE, Smashies demands judgment in its favor in an amount to be determined at trial, plus interest and costs and all other relief that the Court deems to be just and proper.

## JURY DEMAND

Smashies demands a trial by jury on all issues so triable.

Dated: September 1, 2010

/s/ Zachary N. Coseglia
Zachary N. Coseglia (BBO 663687)
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
Telephone: 617.406.6000
Fax: 617.406.6100

Kimberly K. Egan
Michelle L. Schaefer
Mitka T. Baker
DLA PIPER LLP (US)
500 Eighth Street, N.W.
Washington, D.C. 20004
Telephone:   (202) 799-4000
Facsimile:   (202) 799-5000

*Counsel for Smashies, Inc.*